UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER P.,

            Plaintiff,

v.                                                        CASE NO 1:22-cv-00001 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

HILLER COMERFORD INJURY &                KELLY LAGA-SCIANDRA, ESQ.
DISABILITY LAW                                  KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               DANIELLA M. CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   JOSHUA L. KERSHNER, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is DENIED, the defendant's motion for judgment

1

on the administrative record is GRANTED, and the decision of the Commissioner is AFFIRMED.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 26, 1991, and has at least a high school education. (Tr. 239, 245). Generally, plaintiff's alleged disability consists of grand mal seizures, memory problems, depression, anger management problems, one kidney, and headaches. (Tr. 238).

### B. Procedural History

On November 28, 2018, plaintiff protectively applied for a period of Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 199). Plaintiff's application was denied initially and after reconsideration. He then timely requested a hearing before an Administrative Law Judge (ALJ). On December 10, 2020, plaintiff appeared before ALJ Andrew J. Soltes, Jr. (Tr. 38-79). On March 18, 2021, ALJ Soltes issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 22-37). On November 8, 2021, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 28, 2018, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: seizure disorder; migraines; single kidney; obesity; anxiety; and depression (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasional stairs and ramps; no ladders, ropes, or scaffolds. No unprotected heights and the claimant must avoid the use of heavy machinery as well as motor vehicles for work purposes. The claimant must avoid extreme temperatures. The claimant is limited to low stress occupations defined as: simple routine tasks; basic work related decisions; and rare changes in the workplace setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 26, 1991 and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 28, 2018, the date the application was filed (20 CFR 416.920(g)).
(Tr. 22-37).

## II.   THE PARTIES' BRIEFINGS

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, plaintiff argues that the ALJ erred by not adopting all the limitations from an opinion he found persuasive. Second, plaintiff asserts that the ALJ improperly discounted his subjective complaints by emphasizing his noncompliance with treatment

recommendations without considering potential explanations for the noncompliance. (Dkt. No. 8 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

Defendant responds to each argument. First, defendant argues the RFC is based on an appropriate consideration of plaintiff's medical and non-medical records, including medical opinions of record. Second, defendant asserts the ALJ properly considered plaintiff's subjective allegations pertaining to his seizures. (Dkt. No. 9 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combin)ation of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A. Opinion Evidence

Plaintiff first contends that the ALJ committed legal error by failing to include a limitation in the RFC that was contained in a medical opinion which he found persuasive. More specifically, the ALJ found persuasive an opinion from consultative examining internist Nikita Dave, M.D., indicating, in pertinent part, that plaintiff should avoid ladders, heights, sharp equipment and machinery due to seizures, and that the plaintiff may benefit from a seated posture due to unpredictable seizures. (Dkt. No. 35). As denoted above, the ALJ's RFC finding limited plaintiff to light work except occasional stairs and ramps; no ladders, ropes, or scaffold; no unprotected heights; and avoidance of heavy machinery as well as motor vehicles for work purposes. (Tr. 29). Plaintiff contends that remand is required since the ALJ failed to explain the discrepancy between the RFC and Dr. Dave's opinion. (Dkt. No. 8 at 12-15).

First, to the extent plaintiff contends that remand is required simply because the ALJ did not adopt all the limitations contained in Dr. Dave's opinion, his argument lacks merit since an ALJ's RFC finding need not mirror any single medical opinion. *Davis v. Kijakazi*, 2023 WL 5726054, at *12 (S.D.N.Y. Aug. 18, 2023) ("Regardless of how many medical source statements the ALJ receives – or the weight he assigns to them – the

6

determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion."). Moreover, an ALJ is not required to adopt every limitation contained in a medical opinion even where, as here, he finds the opinion overall to be persuasive. *Kenneth H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-735-DB, 2023 WL 6065026, at *9 (W.D.N.Y. Sept. 18, 2023) ("[T]he ALJ was not required to wholesale adopt Dr. Lee's opinion solely because it was found to be persuasive, as plaintiff appears to argue.").

Second, the ALJ relied on other medical findings and opinions that supported the RFC. At the hearing, plaintiff testified he had no limitations sitting, standing, or walking and testified he could lift up to 80 pounds. (Tr. 61-62). Plaintiff's treating primary care provider, Dr. Masood, repeatedly recommended plaintiff use precaution around driving, swimming, and operating machinery. (Tr. 608, 614-15, 664, 667-68; *see also* Tr. 705, 809 (hospital discharge recommendations to avoid driving or swimming). Neurologist Dr. Anand advised plaintiff to not drive until he was seizure free for one year. (Tr. 703, 705). Plaintiff does not offer any evidence that the opined possible postural limitation of being seated was supported by other medical evidence of record.

The ALJ also appropriately considered plaintiff's activities of daily living which were consistent with the RFC for light work and no greater limitations than included in the decision. Plaintiff testified that he lived alone and cared for his three children, whose ages were 8, 6, and 6 at the time of the hearing. (Tr. 95, *see* Tr. 47; *see also* Tr. 657 (noting he was waiting for social security disability, indicating he felt overwhelmed raising three children with limited financial means); 689 ("He takes care of the needs of his three children."), 692, 820, 844 ("He stated that it also worked best if he was able to keep his

appointments on Wednesday mornings due to him being the primary caregiver for his three children."). Plaintiff self-rated cooking for himself and family, getting transportation, paying bills on time, managing his money, doing laundry, keeping his home clean, and caring for his hygiene, as "very easy." (Tr. 831). He also socialized with friends and in 2019 worked part time. (Tr. 63-64, 646, 831).

Third, the RFC was, in fact, consistent with Dr. Dave's expressed limitations. Here, defendant asserts the portion of Dr. Dave's report stating plaintiff "*may benefit* from seated posture" (emphasis added), was not a definitive opinion. (Dkt. No. 9 at 7). Indeed, Dr. Dave's examination of the plaintiff was unremarkable, and she relied upon plaintiff's subjective reports of seizure activity, whereas the ALJ appropriately relied on the record as a whole in assessing the RFC limitations from plaintiff's seizure disorder. *See Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (holding that the court will not "second-guess" an ALJ's consideration of a medical opinion when it is supported by substantial evidence). The Court finds it apparent from review of the decision as a whole that the ALJ accepted Dr. Dave's opinion for the clear limitations associated with plaintiff's seizure disorder but not the vague limitation prefaced with an auxiliary modal verb that only expressed a possible limitation. Plaintiff's argument that the opinion could be taken as a "sit/stand option" is further evidence that the limitation was ambiguous. (Dkt. No. 8 at 15).

While the ALJ could have provided a clearer explanation, reversal is not warranted when the Court can glean the rationale for the ALJ's decision. *Chance v. Comm'r of Soc. Sec.*, No. 18-CV-6043-FPG, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019)(*citing Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (stating that courts "do not

require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). As discussed in the next point, the ALJ specifically noted that plaintiff's non-compliance with seizure medication or treatment was a contributing factor for seizure activity and Dr. Dave's conclusion was based partly on plaintiff's unsupported subjective reports. (Tr. 31). *Miller v. Saul*, No. 3:19-CV-00306(WIG), 2019 WL 5485303, at *5 (D. Conn. Oct. 25, 2019) (finding ALJ appropriately discounted opinion where the claimant was not forthcoming about drug use being the reason for a recent hospitalization, as "[a]n ALJ may properly discount an opinion that is based heavily on a claimant's subjective allegations when those allegations are not credible or not supported by objective medical evidence.").

### B. Subjective Complaints

Next plaintiff argues that the ALJ improperly discounted his subjective complaints and opinion evidence by emphasizing his noncompliance with seizure medication and treatment without considering potential explanations for his noncompliance. (Dkt. No. 8 at 16-20). For the reasons explained below, plaintiff's challenge lacks merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *See id*. Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." Id. The relevant factors for the ALJ to weigh include:

   (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4)

[t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms ...; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

See 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Plaintiff initially cites to noncompliance case law that is not applicable to the facts of this claim. For instance, treatment was not already proven to be unhelpful. (Dkt. No. 8 at 16, citing Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000). This is in juxtapose to evidence in this case which reveals treatment was helpful and medication noncompliance led to increased/breakthrough seizures. (Tr. 384-391). Also, plaintiff never asserted failure to comply with seizure treatment was a feature of his mental illness. (Id. at 17 citing Simpson v. Colvin, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y. Aug. 25, 2016). Plaintiff's argument concedes he was noncompliant, but he is attempting to offer post-hoc rationalizations for that noncompliance to secure a remand.

To be sure, while an ALJ may properly consider a claimant's noncompliance with recommended treatment in evaluating his subjective symptoms, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance. See SSR 16-3p, 2017 WL 5180304, *9 (2017) ("[w]e will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of noncompliance] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); see also Greene v. Berryhill, 2018 WL 8646666, *8 (D. Conn. 2018) ("[b]efore drawing an inference, the ALJ must consider possible reasons he or she may not comply with treatment") (internal quotations omitted).

Here, ALJ Soltes found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 29). Review of the decision demonstrates that the ALJ assessed plaintiff's subjective complaints in the context of a comprehensive review of the entire record.

As the ALJ noted, despite plaintiff's self-report to Dr. Dave that he was always compliant with seizure medications, the record clearly establishes plaintiff's seizure activity was largely precipitated by apparent noncompliance with medication. (Tr. 30-31; s*ee, e.g.,* Tr. 384, 681, 756, 766 (hospital diagnoses of noncompliance); 393 (noting history of noncompliance), 657 (primary care provider noting plaintiff's history of noncompliance with medications and with specialist treatment, stressing importance of compliance); 453 (listing recurrent seizures as a primary impression and noncompliance as a secondary impression); 721 (noting low Keppra levels during hospital admission following seizure); 789 (Plaintiff's mother's report that he had not been taking his seizure medication as prescribed)). Notably, his diagnosis from the emergency department in November 2018 was "patient's other noncompliance with medication regimen" and "breakthrough seizures secondary to noncompliance." (Tr. 384-391). It was similar after hospitalizations in 2020 as well. (Tr. 766, 769, 783). Plaintiff's providers repeatedly stressed to him the importance of complying with his medication regimen and with specialist treatment and explained his ongoing noncompliance regimen made successfully treating his seizure impairment more difficult. (Tr. 664, 657, 721).

In sum, the ALJ relied on plaintiff's treating sources and medical records to support the finding that non-compliance was a seizure risk factor. (*See, e.g.*, Tr. 769, 784 ("[Seizure r]isk factors consist of medication noncompliance); *see also* Tr. 657 ("it was noted to him that it is very difficult for us to treat him when he does not comply with [treatment] directions"); 681 (diagnosing "Breakthrough seizures secondary to noncompliance")). Despite the evidence related to plaintiff's seizure disorder, revealing that the seizures reduced in frequency when plaintiff was compliant with his prescribed medication regimen, the ALJ still accounted for the seizures in the RFC. *See Andrew B. v. Comm'r of Soc. Sec.*, No. 19-CV-1079, 2021 WL 1117024, at *8 (W.D.N.Y. Mar. 24, 2021) (finding RFC that restricted plaintiff to work that did not entail any hazards, such as climbing ladders, ropes, or scaffolds, or being around heights or dangerous machinery accommodated seizure activity that was controlled by medications and exacerbated by noncompliance).

The ALJ did not only look to plaintiff's noncompliance when considering his subjective complaints but also the significant activities of daily living as discussed above. (Tr. 28, 30-31, Tr. 47, 65, 573, 646, 689, 692, 820, 831). *See Swanson v. Comm'r of Soc. Sec.* No. 1:18-CV-285-DB, 2020 WL 4018194, at *9 (W.D.N.Y. July 16, 2020) ("Inconsistencies in the evidence, including a claimant's activities, can undermine a claimant's allegations of disabling limitations."). The ALJ properly considered plaintiff's noncompliance with treatment recommendations as only one factor in evaluating his subjective complaints and his determination is supported by substantial evidence. *Cf. Farrell v. Berryhill*, No. 16-CV-509 HBS, 2018 WL 4560590, at *2 (W.D.N.Y. Sept. 24, 2018) ("The ALJ also had discretion to give weight to those parts of the record indicating

that medication, while not eliminating plaintiff's seizures entirely, kept them mostly under control.") (*citing Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (summary order) (no disability based on seizures where prescribed medication controlled symptoms)).

Accordingly, remand is not warranted because plaintiff has not established that the ALJ's RFC lacked substantial evidentiary support or that he was more restricted. *See Schillo*, 31 F.4th at 78 ("Under our very deferential standard of review, we cannot say that no reasonable factfinder could have reached the same conclusion . . . ." (internal citation omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**.

Dated: June 17, 2024  
Rochester, New York

J. Gregory Wehrman  *J.G.W.*
HON. J. Gregory Wehrman
United States Magistrate Judge